IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SONIA MAXWELL PURVIS, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>CLARKSVILLE MONTGOMERY )<br>COUNTY COMMUNITY ACTION )<br>HEAD START, *et al.*, )<br>    Defendants. ) | Civil Action No. 3:19-cv-1161<br>Judge Trauger/Frensley<br>Jury Demand |

## REPORT AND RECOMMENDATION

Pending in this case is the Motion to Dismiss (Docket No. 5) filed by Defendants Clarksville Montgomery County Community Action Head Start; Felecia Bagwell, individually; Paris Carnell, individually; Leslie Chiodini, individually; and Sonda Finley, individually (collectively "Defendants"). Plaintiff, who is proceeding *pro se*, has not responded in opposition, and the time within which she was required to do so has expired. LR 7.01(a)(3). This matter has been referred to the undersigned Magistrate Judge for a report and recommendation. Docket No. 4.

For the reasons stated below, the Magistrate Judge RECOMMENDS that Defendants' Motion to Dismiss be GRANTED with respect to individual Defendants Felecia Bagwell, Paris Carnell, Leslie Chiodini, and Sonda Finley; that Defendants' Motion to Dismiss be DENIED WITHOUT PREJUDICE with respect to Defendant Clarksville Montgomery County Community Action Head Start; and that Plaintiff be ORDERED to file an amended complaint with the Clerk of Court providing a more definite statement of her claims and underlying factual allegations pursuant to Fed R. Civ. P. 12(e), within 21 days of this Report and Recommendation being adopted.

## STATEMENT OF THE CASE

On June 17, 2019, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). Docket No. 1-1, p. 2. The EEOC Charge alleged discrimination based on retaliation and disability, and the narrative portion reads as follows:

> I was hired by the above[-]named employer as a Teacher's Assistant around April 1999.
>
> Around August 7, 2018, I had an accident in the workplace that aggravated my disability, I sought medical treatment at the time of incident. Around Mid-August a workplace incident was filed, and I was referred to the company doctor for an assessment of my Injuries. August 16, 2018, [*sic*] I met with the company doctor for our scheduled assessment. During my visit, I was accused of allegedly faking my Injuries and the doctor requested I provide medical documents from all my medical care providers regarding my workplace accident. On September 28, 2018, I provided my employer with the requested documents with work restrictions and was told there were no available positions to accommodate my needs. At the conclusion of the meeting, HR could only give me the remaining balance of my FMLA effective October 1, 2018. On November 28, 2018, I allegedly resigned for not being able to return to work.
>
> I believe I have been discriminated against for requesting a reasonable accommodation and discharged in retaliation, In violation of the Americans with Disabilities Act Amendments Act of 2008.

Docket No. 1-1, p. 2.

On September 23, 2019, the EEOC closed the case and issued Plaintiff a "Right-to-Sue" letter, which Plaintiff attached to her complaint, demonstrating she exhausted available administrative remedies. Docket No. 1-1, p. 1. On December 26, 2019, Plaintiff filed a complaint initiating this action. Docket No. 1.

On February 3, 2020, Defendants filed the instant Motion to Dismiss, or alternatively, for a More Definite Statement (Docket No. 5), along with an accompanying Memorandum (Docket No. 6). Plaintiff has not filed a response or an amended complaint under Fed. R. Civ. P. 15(a)(1)(b).

# FACTUAL BACKGROUND[1]

Plaintiff suffers from "Lupus SLE,"[2] and has been diagnosed since at least July 2015. Docket No. 1, pp. 4, 11, 15, 24-25, 40. In a "Medical Certification" form on Defendant's letterhead, healthcare provider Margarita V. Barlow, APRN-BC, indicated that the Lupus would cause "episodic flare-ups which prevent the employee from performing [her] job functions." Docket No. 1, pp. 25. The healthcare provider stated the Lupus "can cause weakness, pain, difficulty with concentration [*sic*]." *Id.* "Lupus flare[-]ups may be random and require 24-48 hours of recovery time per episode." *Id.* The healthcare provider indicated that it was "medically necessary for the employee to be absent from work during the flare-ups," and estimated Plaintiff would have three flare-ups per month, precluding Plaintiff from working 1-2 days per episode. *Id.* The form is dated March 22, 2018. *Id.*

Since April 23, 2013, Plaintiff has also had the demonstrated ability to function at the "light physical demand level," as defined by the Dictionary of Occupational Titles promulgated by the U.S. Department of Labor. Docket No. 1, pp. 19, 21. Plaintiff alleges she has been on "light duty" at her place of employment since April 23, 2013. *Id.* at 9, 38. She also alleges she has had "permanent restrictions" since May 21, 2013. *Id.* at 22, 38.

With this background in mind, the Court will turn to the facts giving rise to this lawsuit.

---

[1] For purposes of the instant Motion to Dismiss, all factual allegations in the complaint are taken to be true.

[2] Lupus SLE is "a chronic, inflammatory, often febrile multisystemic disorder of connective tissue that proceeds through remissions and relapses; it may be either acute or insidious in onset and is characterized principally by involvement of the skin, joints, kidneys, and serosal membranes." *Lupus, systemic l. erythematosus*, DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, p. 1080 (32d ed. 2012). "The condition is marked by a wide variety of abnormalities, including arthritis, arthralgias, nephritis, central nervous system manifestations, pleurisy, pericarditis, leukopenia or thrombocytopenia, hemolytic anemia, an elevated erythrocyte sedimentation rate, and the presence in the blood of distinctive cells called LE cells." *Id.*

On August 7, 2018, Plaintiff fell while walking on a ramp at her place of employment. Docket No. 1, pp. 4, 11, 14, 39.

> After falling[,] I sat for about 15 [minutes] and decided I needed to be seen. My supervisor seemed upset that I changed my mind to be seen. I went to Dr's Care [*sic*] and saw Dr. Shippen, who suggested rest and very amt of restrictions [*sic*]. I received Robaxin and a back and shoulder brace to wear. [*See* Docket No. 1, p. 23.] I explained I was in a lot of pain. Dr. Shippen state[d] they don't put people off work; but my employer can. I informed my employer of how much [*sic*] I was [] in. I also told Paris Carnell I would not be there August 8, because of the medicine and pain. [] I also returned to Dr's Care [*sic*] because I had a reaction to the Robaxin. I was given a Toradol shot and voltren gel cream to rub on [the] hurt area.

Docket No. 1, p. 39.

Plaintiff subsequently "called out" to her employer on August 8th, 9th, and 10th to provide notice she would be medically unable to return to work. *Id.* at 4. However, her employer would only allow her to use FMLA leave time on the August 10 absence. *Id.*

> I was seen by <u>3</u> <u>different</u> <u>Dr's</u> at <u>Dr's Care</u> and[,] even with me telling them of my pain due to flares that [exacerbated] from [the] fall to create Lupus flares, I was told my flares were not caused from my Lupus. I was given occurrences the month of August because my employer would not allow me to us[e] FMLA.

Docket No. 1, p. 11 (emphasis in original).

> The month of August I received 9 occurrences. I fel[t] my employer was retaliating because I called OSHA and Building [*sic*] and codes was called [*sic*] to repair the ramp. I also was denied light duty because my employer states theire [*sic*] is no place for me in the Head Start Program and all they (my employer) could offer me was the remain[der] of my FMLA.

*Id.* at 12. *See also* Docket No. 1, pp. 9, 17.

Plaintiff underwent two other examinations in which a "Dr. Kent" saw Plaintiff and "insinuated [she] didn't injure [her]self." Docket No. 1, p. 15. The next month, however, Plaintiff received a "Child Care Provider Medical Report" from healthcare provider Margarita V. Barlow, APRN-BC, who indicated that Plaintiff "has a history of Lupus which increases her pain generally which [*sic*] can affect her ability to care for children physically. Docket No. 1, p. 10. The healthcare

4

provider recommended Plaintiff "have a light duty position that does not require excessive physical exertion/lifting." *Id.* Defendants acknowledged in a September 28, 2018 letter that they had received the Medical Report and concluded a "light duty" position was not available—despite the fact that Plaintiff has had light duty accommodations in the past, dating as far back as 2013. *Id.* at 9. At the time of the letter, Plaintiff had been working for Defendants for almost 20 years. *Compare* Docket No. 1, p. 9 (dated Sept. 28, 2018) *with* Docket No. 1-1, p. 2 ("I was hired . . . around April 1999").

"To have an injury and Lupus, SLE is pain people don't realize unless they experience it themselves." Docket No. 1, p. 15. Defendants were aware of Plaintiff's disabilities. *Id.* at 41. Plaintiff was discharged and is no longer employed by Defendants. *Id.* at 50. Plaintiff prays for lost wages and prejudgment interest, and generally for compensatory and punitive damages available under the ADA. *Id.* at 5-7, 13, 16.

## STANDARD OF REVIEW

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the Plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

Under Rule 8(a)(2), however, the complaint's allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff

cannot rely on "legal conclusions" or "threadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556. According to the Supreme Court, "plausibility" occupies that wide space between "possibility" and "probability." *Iqbal*, 556 at 678. Any claim for relief must contain "a short and plain statement of the claim showing that a pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting FED. R. CIV. P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* (citing *Twombly*, 550 U.S. at 555).

Pleadings and documents filed by *pro se* litigants are to be "liberally construed," and a "*pro se* complaint, however in artfully pleaded, must be held to a less stringent standard than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, "the lenient treatment generally accorded to pro se litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (citing *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991)). The basic pleading essentials are not abrogated in *pro se* cases. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 2011) (quoting *Ashcroft*, 556 U.S. at 678) (internal quotations and emphasis omitted). District Courts "have no obligation to act as counsel or paralegal" to *pro se* litigants. *Pliler v. Ford*, 542 U.S. 22, 231 (2004). District Courts are also not "required to create" a *pro se* litigant's claim for him. *Payne v. Sec'y of Treasury*, 73 F. App'x 836, 837 (6th Cir. 2003).

## ANALYSIS

Before filing a Title VII or ADA claim in federal court, a plaintiff must exhaust administrative remedies by filing a Charge of Discrimination with the EEOC. *Williams v. NW.*

6

*Airlines, Inc.*, 53 F. App'x 350, 351 (6th Cir. 2002); *see also Davis v. Sodexho, Cumberland College Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998). "Actions in federal court should not be restricted by the failure of a complainant to attach the correct legal conclusion to the EEOC claim, conform to procedural technicalities, or include the exact wording which might be required in a judicial pleading." *Tisdale v. Federal Exp. Corp.*, 415 F.3d 516, 527 (6th Cir. 2005) (internal quotations omitted). EEOC Charges should be "liberally construed" because they are frequently prepared by laypersons unfamiliar with legal technicalities and acting without advice of counsel. *Id*. Moreover, "the EEOC complaint should be liberally construed to encompass all claims reasonably expected to grow out of the charge of discrimination." *Randolph v. Ohio Dept. of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006) (internal quotations omitted).

In her EEOC Charge (Docket No. 1-1, p.2) and her Complaint (Docket No. 1), Plaintiff alleges Defendants discriminated against her based on her disability, retaliated against her for reporting a workplace hazard to OSHA, and failed to make reasonable accommodations for her, all in violation of the Americans with Disabilities Act of 1990 ("ADA"), as codified, 42 U.S.C. § 12112, *et seq. See* Docket No. 1, pp. 4, 9, 11-12, 38.

The ADA prohibits covered employers from discriminating against a "qualified individual on the basis of disability" with regard to hiring, advancement, training, termination, employee compensation, and "other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

For a claim of disability discrimination, a plaintiff must show that: (1) she is disabled; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) she suffered an adverse employment action; (4) the defendant employer knew or had reason to know of her disability; and (5) her position remained open while the defendant employer sought other applicants or replaced her. *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 320 (6th Cir.

7

2019); *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891-92 (6th Cir. 2016).

For a claim of retaliation, a plaintiff must show that: (1) she engaged in activity protected under the ADA; (2) the defendant employer knew of that activity; (3) the defendant employer took an adverse action against her; and (4) there was a causal connection between the protected activity and the adverse action. *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014) (citing *A.C. ex rel. J.C. v. Shelby Cty. Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013)); *Bullard v. Fedex Freight, Inc.*, 218 F. Supp. 3d 608, 618-19 (M.D. Tenn. 2016).

For a claim of failure to accommodate, a plaintiff must show that (1) she is disabled; (2) she is otherwise qualified for the position such that she can perform the essential functions of the job, with or without reasonable accommodation; (3) the defendant employer knew or had reason to know of her disability; (4) an accommodation was needed; and (5) the defendant employer did not provide the necessary accommodation. *Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 982 (6th Cir. 2011).

## I.     Claims Against Individual Defendants

Defendants argue that the individual defendants named in Plaintiff's complaint—Bagwell, Carnell, Chiodini, and Finley—should be dismissed from this lawsuit because the ADA does not provide for individual liability for any causes of action Plaintiff asserts. Docket No. 6, pp. 2-3. The Court agrees.

Individuals who do not independently qualify under the statutory definition of employers may not be held personally liable in ADA cases. *Williams v. McLemore*, 247 F. App'x 1, 8 (6th Cir. 2007); *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 808 n.1 (6th Cir. 1999).

Accordingly, the Magistrate Judge RECOMMENDS that Defendants' Motion to Dismiss be GRANTED with respect to individual Defendants Felecia Bagwell, Paris Carnell, Leslie

8

Chiodini, and Sonda Finley.

## II. Claims Against Corporate Defendant

Next, Defendants argue that "Plaintiff's Complaint should be dismissed in its entirety because it fails to comply with FED. R. CIV. P. 8(a) and 10(b)." Docket No. 6, p. 3. Arguing that Plaintiff's Complaint does not meet the pleading requirements set out in Rules 8(a) and 10(b), Defendants contend that "Plaintiff's Complaint is merely a contradictory narrative relating to multiple sets of circumstances with only bare conclusions that she was treated unfairly." *Id.* at 5. Defendants continue, "Plaintiff's narrative does not separate out her claims in any manner; rather, her allegations are incoherently spread across multiple pages that require Defendants to piecemeal her Complaint together in an effort to understand the nature of her claims." *Id.*

Defendants also argue that Plaintiff's Complaint is a quintessential "shotgun pleading" and should therefore be dismissed. *Id.* at 6. Alternatively, Defendants argue, Plaintiff should be required to replead her complaint and provide a more definite statement pursuant to FED. R. CIV. P. 12(e). *Id.* at 6-7.

Rule 8(a) of the Federal Rules of Civil Procedure provides as follows:

**(a) Claim for Relief.** A pleading that states a claim for relief must contain:

> **(1)** a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
>
> **(2)** a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> **(3)** a demand for the relief sought, which may include relief in the alternative or different types of relief.

As mentioned previously, the Supreme Court has made clear that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679.

9

Case 3:19-cv-01161 Document 14 Filed 08/20/20 Page 9 of 14 PageID #: 146

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experiences and common sense." *Id.*

Rule 12(e) provides that a "party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed R. Civ. P. 12(e). "The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired." *Id.* "If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order." *Id.* While generally disfavored by federal courts because of the availability of a dismissal without prejudice under Rule 8(a)(2),

> [t]he Rule 12(e) motion for a more definite statement is perhaps the best procedural tool available to the defendant to obtain the factual basis underlying a plaintiff's claim for relief. . . .When presented with an appropriate Rule 12(e) motion for a more definite statement, the district court shall grant the motion and demand more specific factual allegations from the plaintiff concerning the conduct underlying the claims for relief.

*Thomas v. Indep. Township*, 463 F.3d 285, 301 (3d Cir. 2006). *See also E.E.O.C. v. FPM Grp., Ltd.*, 657 F. Supp. 2d 957, 966 (E.D. Tenn. 2009).

In this case, it is difficult to discern whether Plaintiff states any plausible claims for relief because, as Defendants allude, Plaintiff's Complaint contains loosely compiled claims strewn across multiple handwritten pages that, in some instances, seem to be out of order. For example, it seems as though page 5 more logically follows page 6 rather than preceding it, and page 13 ends in a bulleted list that seems to pick up again on page 16. *See generally* Docket No. 1.

However, contrary to Defendants' assertion that the Complaint is "devoid of any factual allegations" (Docket No. 6, p. 5), Plaintiff states many factual allegations, and even attached

10

several exhibits in support thereof. *See, e.g.*, Docket No. 1, p. 4 ("I received occurrences Aug 8 [and] Aug 9 . . . employer said I can't use FMLA because 'you don't have pain from your Lupus SLE'"), p. 11 ("I had an accident August 7, 201[8] from which I was injured. My [e]mployer would not allow me to me to be off work because <u>their</u> Dr. [*sic*] from workers compensation Dr. [*sic*] [d]idn't put off. . . . [I had] pain due to flares that [were exacerbated] from [the] fall to create Lupus flares."), p. 12 ("I also was denied light duty because my [e]mployer states [there] is no place for me in the Head Start Program and all they (my employer) could offer me was the remaining [*sic*] of my FMLA."), p. 14 ("Ms. Maro would not put me off work. She called and spoke to Sonda Finely [*sic*] - HR and came back and told me . . . Ms. Finely [*sic*] said I can work."), p. 38 ("My place of work has denied me leave when I had Dr's appts [*sic*] and told [me] to resubmit [my] leave request[.] My employer has denied me have [*sic*] a 3rd person for a behavior child"). *See also* Docket No. 1, p. 9 (letter from employer denying "light duty" accommodation), p. 10 (physician's recommendation for a "light duty" position), p. 17 (calendar from employer indicating absences), pp. 24-25 (medical certification form discussing necessary Lupus accommodations).

Nonetheless, much of Plaintiff's Complaint is either redundant, impertinent or conclusory, and contains many "unadorned, the-defendant-unlawfully-harmed-me" accusations which the Supreme Court proscribed in *Twombly* and *Iqbal*. *Compare* Docket No. 1, pp. 5-6 *and* pp. 13, 16 *with* Docket No. 1, p. 7. *See also* Docket No. 1, pp. 43, 46, 49.

Upon review, Plaintiff's Complaint clearly does not meet the pleading requirements set forth in Rule 8(a)(2) of the Federal Rules of Civil Procedure. Plaintiff's Complaint further does not comply with Rule 8(d), which provides that "[e]ach allegation must be simple, concise, and direct," although "[n]o technical form is required." *Id*. As Defendants assert (Docket No. 6, p. 5), Plaintiff's Complaint additionally violates Rule 10(b) of the Federal Rules of Civil Procedure,

11

which requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances" and advises that, "[i]f so doing would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense." *Id.* The Complaint is somewhat verbose, grammatically incorrect, and hard to understand because Plaintiff does not identify which actions apply to which claims. However, the Court does not expect Plaintiff, who is proceeding *pro se*, to strictly comply with form requirements, such as numbering the paragraphs in her complaint, so long as they do not violate traditional notions of fair play and substantial justice—just as the Court will hold harmless nonwillful violations of local rule form requirements by Defendants, who are represented by counsel. *See, e.g., Phillips v. Girdich*, 408 F.3d 124, 125 (2d Cir. 2005) ("Although [FRCP 10(b)] contains important guidelines for the form of pleadings in federal court, we hold that harmless violations of [FRCP 10(b)] should be excused so that claims may be resolved on their merits.").

Under these circumstances, the Court can either grant Defendant's Motion to Dismiss without prejudice and provide leave to amend, *Brown v. Matauszak*, 415 F. App'x 608, 614-16 (6th Cir. 2011), or deny Defendant's Motion to Dismiss, grant Defendant's alternative Motion for More Definite Statement and order Plaintiff to file an amended complaint that provides a more definite statement of her claims, *see, e.g.*, *Glendon Lamar Plemons v. Everett L. Hixson, Jr.*, No. 3:09-CV-301, 2010 WL 199996, at *2 (E.D. Tenn. Jan. 13, 2010).

In the instant case, the Court believes that the latter is the more prudent and efficient course as it permits Plaintiff to remedy the deficiencies in her Complaint without dismissing her case at this time. Fed R. Civ. P. 8(e). While Plaintiff's Complaint contains many factual allegations that may—*or may not*—nudge her claims "across the line from conceivable to plausible," requiring Defendants to prepare a responsive pleading to the Complaint at this time would severely prejudice

12

Defendants. A complaint should be presented with sufficient clarity to avoid requiring the court or opposing parties to sift through its pages in search of what a plaintiff is asserting. *Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990).

Accordingly, the Magistrate Judge RECOMMENDS that Defendants' Motion to Dismiss be DENIED WITHOUT PREJUDICE with respect to Defendant Clarksville Montgomery County Community Action Head Start (a/k/a Clarksville Montgomery County Community Action Agency, *see* Docket No. 5, p. 1 n.1) and that Defendants' alternative Motion for More Definite Statement be GRANTED.

## CONCLUSION

For the reasons stated above, the Magistrate Judge RECOMMENDS that Defendants' Motion to Dismiss be GRANTED with respect to individual Defendants Felecia Bagwell, Paris Carnell, Leslie Chiodini, and Sonda Finley; that Defendants' Motion to Dismiss be DENIED WITHOUT PREJUDICE with respect to Defendant Clarksville Montgomery County Community Action Head Start; and that Plaintiff be ORDERED to file an amended complaint with the Clerk of Court providing a more definite statement of her claims and underlying factual allegations pursuant to Fed R. Civ. P. 12(e), within 21 days of this Report and Recommendation being adopted.

Plaintiff is hereby admonished to conform future filings in this Court to the Federal Rules of Civil Procedure, which, as previously notified by the District Judge (Docket No. 4, p. 1), are available online.[3] "These rules govern the procedure in all civil actions and proceedings in the United States district courts . . . They should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and

---

[3] https://www.uscourts.gov/sites/default/files/federal_rules_of_civil_procedure_dec_1_2019_0.pdf

proceeding." Fed R. Civ. P. 1. Both parties should also take notice of the Local Rules of this Court, which are available on the Court's website.[4]

Failing to prosecute the case, comply with the Federal Rules of Civil Procedure, or comply with a court order may result in dismissal of this case. Fed R. Civ. P. 41(b); *see also Link v. Wabash R.R.*, 370 U.S. 626, 630-31 (1962) (holding that the court may enter an involuntary dismissal on its own motion).

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); Fed R. Civ. P. 72.

                                                                     **JEFFERY S. FRENSLEY**
                                                                     **United States Magistrate Judge**

---

[4] https://www.tnmd.uscourts.gov/sites/tnmd/files/TNM%20LOCAL%20RULES%20OF%20COURT%202020_06_09.pdf